**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

NCR VOYIX CORPORATION

    *Plaintiff*,

v.

AT&T ENTERPRISES, LLC,
f/k/a AT&T CORP.

    *Defendant*.

</td><td>

Case No. 26-cv-00848-DEH

</td></tr>
</table>

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF NCR VOYIX**
**CORPORATION'S MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.........................................................................................................1

ARGUMENT.................................................................................................................................2

I.      AT&T Misstates NCR's Burden. ....................................................................................2

II.     NCR Is Likely to Succeed on the Merits. ....................................................................2

III.    NCR Is Likely to Suffer Irreparable Harm Absent Relief. ........................................5

        A.      AT&T Has Waived Its Arguments on Irreparable Harm.........................5

        B.      AT&T Fails to Rebut NCR's Verified Allegations of Irreparable Harm..................6

IV.    Public Interest and the Equities Support an Injunction........................................10

CONCLUSION.............................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpha Cap. Anstalt v. Shiftpixy, Inc.*,
  432 F. Supp. 3d 326 (S.D.N.Y. 2020).............................................................................6, 8

*Awosting Res. LLC v. Chaffin/Light Assoc. Co.*,
  296 F. Supp.2d 470 (S.D.N.Y. 2003)..................................................................................7

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  910 F.3d 1049 (2d Cir. 1990)............................................................................................10

*Coaction Specialty Mgmt. Co., Inc. v. eMaxx Ins. Servs., LLC*,
  2025 WL 3718475 (S.D.N.Y. Dec. 23, 2025) .....................................................................3

*Credit Suisse Sec. (USA) LLC v. Ebling*,
  2006 WL 3457693 (S.D.N.Y. Nov. 27, 2006).....................................................................9

*FEI Hong Kong Co. Ltd. v. GlobalFoundries, Inc.*,
  2020 WL 1444956 (S.D.N.Y. Mar. 25, 2020) .....................................................................7

*Firemen's Insurance Co. of Newark v. Keating*,
  753 F. Supp. 1146 (S.D.N.Y. 1990)....................................................................................6

*Gibson v. U.S. I.N.S.*,
  541 F. Supp. 131 (S.D.N.Y. 1982) .....................................................................................2

*Gov. Emps. Ins. Co. v. Patel*,
  2026 WL 272486 (2d Cir. Feb. 3, 2026)..............................................................................2

*GPA Inc. v. Liggett Grp., Inc.*,
  862 F.Supp. 1062 (S.D.N.Y. 1994) .....................................................................................8

*Hertzoff v. Diaz*,
  2007 WL 9819264 (S.D.N.Y. Aug. 13, 2007)......................................................................3

*In re M.B. Int'l W.W.L.*,
  2012 WL 3195761 (S.D.N.Y. Aug. 6, 2012).......................................................................6

*JoySuds, LLC v. N.V. Labs, Inc.*,
  668 F. Supp.3d 240 (S.D.N.Y. 2023)...............................................................................3, 4

*JTH Tax, LLC, v. Agnant*,
  62 F.4th 658 (2d Cir. 2023) .................................................................................................6

*Luminant Energy Co. LLC v. Koch Energy Servs., LLC*,
  551 F. Supp. 3d 373 (S.D.N.Y. 2021)..................................................................................5

*Mastrovincenzo v. City of New York*,
    435 F.3d 78 (2d Cir. 2006)......................................................................................................2

*Metro Funding Corp. v. WestLB AG*,
    2010 WL 1050315 (S.D.N.Y. Mar. 19, 2010) .........................................................................3

*Mitsubishi Power Sys., Inc. v. Shaw Grp., Inc.*,
    2004 WL 527047 (S.D.N.Y. Mar. 16, 2004) ..........................................................................8

*Nature's Plus Nordic A/S v. Nat. Organics, Inc.*,
    646 F. App'x 25 (2d Cir. 2016) ..............................................................................................3

*Painewebber, Inc. v. Nwogugu*,
    1998 WL 545327 (S.D.N.Y. Aug. 26, 1998).........................................................................7

*Starbucks Corp. v. McKinney*,
    602 U.S. 339 (2024).................................................................................................................2

*Thales Avionics, Inc. v. L3 Techs.*,
    719 F.Supp.3d 337 (S.D.N.Y. 2004).....................................................................................10

## PRELIMINARY STATEMENT

Rather than engage in the SDA's[1] dispute resolution process, AT&T has decided unilaterally to engage in self-help and award itself a write-off of virtually *all* Cravath legal fees paid by NCR in defending against Kzoo River liabilities.  AT&T attempts to justify this write-off by claiming NCR's documentation of these fees—on Invoice No. Kzoo-01 ("Kzoo-01"), which AT&T paid years ago—was inadequate; that 99% of these fees were not "reasonably incurred"; and that AT&T may now belatedly recoup the sums by stiffing NCR on current and otherwise undisputed invoices for ongoing Kzoo River remediation work.  That is breach, plain and simple.

AT&T hoped it could exploit NCR's current financial situation to strongarm NCR into a credit not only for Kzoo-01 Cravath fees, but also for its portion of $46 million in tax benefits and $86 million in Fox River-related Cravath fees that AT&T (wrongly) claims it overpaid.  That was AT&T's original demand (Opp. Ex. 5), and AT&T expressly conditioned *any* future payment on NCR capitulating to that demand—completely, or by providing a "counter" that AT&T deemed satisfactory.  (Compl. ¶¶ 56-74.)  It was only after NCR sought court intervention that AT&T changed its tune, claiming it "intends" to resume payment after NCR incurs $66 million in costs—yet reserving the right to withhold payments even then.  (Opp. Ex. 17.)

AT&T's newly-minted intent does not affect the merits of the Motion.  AT&T is in breach, as the undisputed facts demonstrate.  (Section II.)  That breach is causing NCR irreparable harm, as its executives have attested to and AT&T conceded it would.  (Section III.)  The public interest strongly favors holding AT&T to its contractual commitments and ensuring NCR can arbitrate this dispute *before* it is irreparably harmed; and the balance of equities weighs entirely against AT&T, which faces no hardship from continuing payments pending arbitration.  (Section IV.)

---

[1] Undefined terms are as defined in the Motion.

**ARGUMENT**

## I.    AT&T MISSTATES NCR'S BURDEN.

In its Motion, NCR explained that it seeks a "prohibitory" injunction, because its requested relief would simply maintain the contractual status quo in existence prior to the alleged breach. (*See* Mot. 14-15.)  AT&T admits that the status quo prior to its July Demand was for AT&T to pay NCR's invoices in full, pending resolution of any disputed fees.  (Opp. 5-7.)  Yet AT&T asserts, without support,[2] that NCR seeks a "mandatory" injunction and therefore bears an "even higher burden."  (*Id.* at 10.)   That bald assertion goes directly against binding authority treating injunctions such as the one NCR seeks here as "prohibitory" and should be rejected.  (Mot. 14-15 (collecting cases).)

## II.    NCR IS LIKELY TO SUCCEED ON THE MERITS.

NCR has plainly demonstrated a likelihood of success on the merits—*i.e.*, "a strong prima facie case" on its breach of contract claim.[3] *Gibson v. U.S. Immig.& Naturalization Servs.*, 541 F. Supp. 131, 137 (S.D.N.Y. 1982); (*see* Mot. § I.A).  AT&T nonetheless maintains that NCR is unlikely to prevail on its claim with respect to the Kzoo Remediation Invoices because NCR purportedly failed to provide "reasonable supporting information" for certain costs on a ***different*** invoice issued and paid in 2023—namely, the $66 million in Cravath fees on Kzoo-01.  (Opp. 20-

---

[2] AT&T cites *Mastrovincenzo v. City of New York*, 435 F.3d 78, 89 (2d Cir. 2006), but that case did not involve a breach of contract.

[3] As in its Motion, NCR makes its case under the higher standard of a "likelihood of success on the merits." (Mot. § I.A.)  For the avoidance of doubt, NCR need only establish a "serious question" on the merits, which it has plainly demonstrated. (Mot. § I.B.)  AT&T is incorrect that the Supreme Court has rejected the serious question doctrine. (Opp. 19.)  The Supreme Court's decision in *Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024), does not mention the doctrine, let alone abrogate it.  Indeed, the Second Circuit has applied the serious question doctrine in *Starbucks'* wake.  *See Gov. Emps. Ins. Co. v. Patel*, 2026 WL 272486, at *5, *9 (2d Cir. Feb. 3, 2026) (affirming preliminary injunction under "serious questions" standard).

2

21.)  AT&T asserts that this alleged failure "fatally undermines the viability of [NCR's] claims" and entitles AT&T to withhold payment.  (*Id.* at 21-23.)  These arguments lack merit.

AT&T's allegation of breach as to Kzoo-01—even if meritorious, which it is not—does not "preclude[]" NCR's breach of contract claim.  (*Id.* at 21.)  "Adequate performance" by a plaintiff only requires strict performance of ***conditions precedent*** to those the defendant allegedly breached, and substantial performance as to the rest.  *See Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 646 F. App'x 25, 26-28 (2d Cir. 2016) (plaintiff's breach of non-condition precedent did not preclude judgment on its breach of contract claim); *JoySuds, LLC v. N.V. Labs, Inc.*, 668 F. Supp.3d 240, 254 (S.D.N.Y. 2023) (adequate performance under a contract is substantial performance). None of AT&T's authority provides otherwise.[4]  Here, AT&T acknowledges that the SDA requires it to indemnify NCR for Exclusive Contingent Liabilities if two conditions are met:  (i) the costs are in excess of $100 million (the "Excess Portion"); and (ii) NCR provides "reasonable supporting information" with the invoice.[5]  (Kruger Decl. ¶ 2; Opp. 4.)  There is no dispute that these conditions have been met for the Kzoo Remediation Invoices now at issue.  While AT&T disagrees that the Cravath fees on Kzoo-01 counted towards the $100 million threshold, it does not disagree that, "[e]ven ***excluding*** Cravath legal fees ***in their entirety*** . . . NCR has incurred and documented for AT&T over $223 million in Kzoo River remediation costs to date," "[m]ore than

---

[4] In *Metro Funding Corp. v. WestLB AG*, the movant had not adequately established that the non-movant's conduct was a breach.  2010 WL 1050315, at \*12 (S.D.N.Y. Mar. 19, 2010) (declining to enjoin termination where non-movant's contractual termination right was triggered). In the other two cases, the movant's breach was material, *i.e.*, there was no substantial performance.  *See Hertzoff v. Diaz*, 2007 WL 9819264, at \*18 (S.D.N.Y. Aug. 13, 2007) (still finding substantial question standard met); *Coaction Specialty Mgmt. Co., Inc. v. eMaxx Ins. Servs., LLC*, 2025 WL 3718475, at \*5 (S.D.N.Y. Dec. 23, 2025).

[5] AT&T's third condition, that litigation expenses be "reasonably incurred" (Opp. 4) does not apply to the Kzoo Remediation Invoices, as those invoices do not include any litigation fees or costs.  AT&T does not argue otherwise.

$165 million" of which "was billed to AT&T before it sent its July Demand." (Mot. 16-17.) In other words, AT&T does not dispute that the Kzoo Remediation Invoices—each issued after the July Demand (Compl. ¶¶ 62-63, 73)—reflect Excess Portions of an Exclusive Contingent Liability. And AT&T has never argued that NCR failed to provide "reasonable supporting information" for *those* invoices. Under AT&T's own articulation of its obligations, it was required to remit payment, and its admitted failure to do so is a breach. (Kruger Decl. ¶¶ 13, 17 (acknowledging AT&T's nonpayment and affirming its intent to withhold future payments).)

Nor can AT&T credibly argue that NCR has not substantially performed under the SDA. The purpose of the SDA was to establish a scheme for sharing future costs incurred as a result of past shared liabilities. (Compl. ¶ 19.) NCR has incurred $290 million in costs for the shared Kzoo River liability; NCR invoiced AT&T for its contractual share across 13 invoices. (*Id.* ¶¶ 78-81.) AT&T's allegation that NCR provided some, but not enough, information for a fraction of costs on a single invoice cannot defeat a finding of adequate performance. *JoySuds*, 668 F. Supp. 3d at 254 (breach does not preclude finding of substantial performance unless it "defeats the object of the parties in making the contract").

AT&T's argument that it is entitled to withhold payment on the Kzoo Remediation Invoices because it purportedly "pre-paid" those invoices through its alleged overpayment for Cravath fees on Kzoo-01 is unavailing. (Opp. 22.) AT&T relies on a tortured reading of Section 9.9, arguing that, because it disputes its payment obligation as to approximately $18 million on *past* invoices (Kruger Decl. ¶ 14), Section 9.9 entitles it to "withhold payment on th[at] Disputed Amount pending resolution of arbitration." (Opp. 23.) But AT&T is not withholding payment on a "disputed amount"—it *already paid that amount years ago*. (Compl. ¶ 52.) Based on its "assum[ption]" that it has overpaid on prior invoices (Opp. 22), AT&T has awarded itself monetary

4

relief in the form of an $18 million go-forward credit against future payments.  That is precisely the type of self-help conduct that the SDA prohibits.[6]

Moreover, AT&T is incorrect that NCR failed to provide "reasonable supporting information" for the Cravath fees on Kzoo-01.  AT&T does not dispute that NCR actually paid Cravath the sums reflected in its invoices; or that NCR provided AT&T with the complete set of Cravath invoices for these fees, spanning 116 pages.  (Compl. ¶ 54).  AT&T even concedes that these invoices constitute "reasonable supporting information" for *some* of the Kzoo-01 fees, but objects to others because they do not include hourly time entries.  (Opp. 6-7 & n.5.)  That is not a valid objection.  The SDA contains no requirement for hourly time entries, nor does it permit AT&T to unilaterally determine what constitutes "reasonable supporting information."  But that issue is best left to arbitration, should AT&T choose to pursue it in that forum.[7]

## III.    NCR IS LIKELY TO SUFFER IRREPARABLE HARM ABSENT RELIEF.

### A.    AT&T Has Waived Its Arguments on Irreparable Harm.

With respect to irreparability, the SDA expressly provides that there is no adequate remedy at law for its breach, and AT&T has waived any argument to the contrary.  (Mot. 21-22; *see* SDA § 12.13 ("The parties agree that the remedies at law for any breach . . . are inadequate compensation for any loss and that any defense in any action for specific performance that a remedy at law would

---

[6] To be sure, NCR disagrees that the definition of "Liabilities" confers AT&T a veto right over fees it unilaterally determines to be unreasonable.  That interpretation contradicts Section 6.3(e), which explicitly prohibits the parties from second guessing one another as to how they choose to defend against liabilities, as AT&T does here.

[7] AT&T suggests that NCR has assumed this obligation because in a prior dispute, NCR agreed to produce 38,000 pages detailing Cravath fees for the Fox River.  (Opp. 21.)  Not so.  NCR's provision of certain detail with respect to one set of invoices does not modify the SDA to require provision of information that goes beyond "reasonable support" for *all* invoices.  *See Luminant Energy Co. LLC v. Koch Energy Servs., LLC*, 551 F. Supp. 3d 373, 377, 379 (S.D.N.Y. 2021) (rejecting argument that a party's prior course of conduct varies express contract terms).

be adequate is waived.").)  AT&T's own authority acknowledges that such provisions are at least relevant indicators of irreparable harm.  *See In re M.B. Int'l W.W.L.*, 2012 WL 3195761, at *12 (S.D.N.Y. Aug. 6, 2012) (court may consider such provision "an admission" of irreparable harm); *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 674 (2d Cir. 2023) (acknowledgement that breach would cause irreparable harm is entitled to weight); *Alpha Cap. Anstalt v. Shiftpixy*, *Inc.*, 432 F. Supp. 3d 326, 334-35 (S.D.N.Y. 2020) (stipulation is a "factor" in assessing irreparable harm).  Moreover, AT&T provides no support for its assertion that NCR's waiver argument "is precluded by controlling law."  (Opp. 18.)  In its Motion, NCR cited two instances where a court enforced contractual provisions providing that monetary damages were an inadequate remedy for breach and waiving any argument to the contrary.  (Mot. 22.).  AT&T does not engage with these cases, and instead exclusively relies upon a case that did *not* include an express contractual waiver at all. (*See* Opp. 18 (citing *Firemen's Ins. Co. of Newark v. Keating*, 753 F. Supp. 1146, 1154 (S.D.N.Y. 1990)).  Such reliance is misplaced.

In an effort to avoid its express waiver, AT&T asserts that its waiver is limited to proceedings for a final award of specific performance. (Opp. 18.)  AT&T's reading defies common sense; there is no reason to believe that the parties contracted to allow arguments in interim proceedings that they contractually waived as to ultimate relief.

### B.  AT&T Fails to Rebut NCR's Verified Allegations of Irreparable Harm.

AT&T's irreparable harm arguments also fail on the merits.

*First*, AT&T argues that this is "a garden variety contract claim" such that NCR's "damages are easily and fully compensable by monetary relief." (Opp. 11.)  That is a strawman.  The parties had expressly agreed this breach is *not* compensable by damages for a reason, and NCR alleges irreparable harm far beyond the contractual sums it is owed.  (*See* Mot. §§ II.B-C & *infra*.)  That distinguishes this case from AT&T's cited authority.  *See Awosting Res. LLC v. Chaiffin/Light*

6

*Assocs. Co.*, 296 F. Supp.2d 470, 473 (S.D.N.Y. 2003) (plaintiff failed to plead non-conclusory allegations of irreparable harm); *FEI Hong Kong Co. Ltd. v. GlobalFoundries, Inc.*, 2020 WL 1444956, at *3 (S.D.N.Y. Mar. 25, 2020) (plaintiff's alleged irreparable harm was a concern about collecting a monetary sum).

*Second*, AT&T is incorrect that NCR's allegations of irreparable harm are "contradicted by the record evidence." (Opp. 13.) AT&T's arguments in this regard mischaracterize the nature of NCR's alleged harm. NCR does not, as AT&T implies (*id.*), claim to be on the verge of insolvency. Rather, NCR alleges that its resources are fully committed to ensuring the successful completion of a high-stakes strategic transition. (Compl. ¶¶ 6, 42-47, 95.) At this critical inflection point, AT&T's breach has forced NCR to take on more debt to avoid diverting funds away from that transition, and the resulting increase in leverage risks a credit rating downgrade at a time when NCR will need access to capital markets to refinance considerable outstanding debts. (Compl. ¶¶ 95-106.) That is irreparable harm. *See Painewebber, Inc. v. Nwogugu*, 1998 WL 545327, at *2 (S.D.N.Y. Aug. 26, 1998) (finding irreparable harm where defendant's conduct "could harm [plaintiff's] credit rating and undermine the confidence of . . . creditors").[8]

AT&T's generalized assertions about NCR's market capitalization or analyst views of NCR's business outlook cannot undermine NCR's verified allegations.[9] (*See* Opp. 13.) The cases AT&T cites to the contrary each involved a claim of impending insolvency or bankruptcy that was

---

[8] AT&T's attempt to distinguish *Painewebber* on the basis that it involved a larger monetary sum (Opp. 17 n. 10) misses the point. The court in *Painewebber* recognized that the harm NCR claims here—the risk of a decreased credit rating and loss of goodwill with lenders—is irreparable. 1998 WL 545327, at *2. AT&T cites no authority to the contrary.

[9] AT&T argues that NCR's allegations "should be given limited weight" because they are "made by individuals without personal knowledge." (Opp. n.7.) To be clear, NCR's employees verified these allegations "to the best of [their] knowledge" except as to matters expressly alleged on information and belief, which are limited to the jurisdictional allegations. (Compl. 36, 37.)

belied by the company's financial health.  *E.g.*, *Mitsubishi Power Sys., Inc. v. Shaw Grp., Inc.*, 2004 WL 527047, at *3-4 (S.D.N.Y. Mar. 16, 2004) (movant failed to show non-movant was "insolvent" such that it would be unable to collect debts); *Alpha Cap. Anstalt*, 432 F.Supp.3d at 334 (same); *GPA Inc. v. Liggett Grp., Inc.*, 862 F.Supp. 1062, 1069-70 (S.D.N.Y. 1994) (examining claim of possible insolvency).  These cases are inapposite as that is not the harm NCR claims.

AT&T also misleadingly claims that NCR's public disclosures contradict its claim of irreparable harm.  (Opp. 14.)  AT&T's cherry-picked quotes are from NCR's Q3 2025 10-Q, filed **before** AT&T confirmed its repudiation and before NCR issued its Escalation Notice.  (Compl. ¶¶ 64, 70.)  It does not discuss "this dispute"; it discusses AT&T's challenge to the reasonableness of Cravath fees, at a time when AT&T had "generally made the payments requested of [AT&T by NCR] on an ongoing basis."  (Opp. Ex. 20, at 26-27.)

*Third*, AT&T's argument that NCR's alleged harm is "speculative" is similarly divorced from NCR's actual allegations.  AT&T's "daisy chain of hypotheticals" is an exaggerated version of NCR's argument.  (Opp. at 15.)  NCR does not need "to incur an unsustainable amount of debt" or "flounder" as a company (*id.*) in order for it to risk a credit rating downgrade.  It is already substantially leveraged, its cash is committed, and AT&T's breach adds a substantial unexpected expense that already has required NCR to take on more debt.  (Compl. ¶¶ 95-106.)  Nor does NCR need an entire "investment community" to "turn[] its back on NCR" (Opp. 15) for it to have difficulty accessing the capital markets to refinance its debt—which it will need to do before year end (Compl. ¶ 105).  It is commonsense that preferred lenders are less willing to extend lines of credit on favorable terms to highly leveraged companies with low credit ratings.  AT&T's hyperbole aside, NCR's reality is that, at this juncture, a relatively small deterioration in its cash flow risks material consequences to its business.  (*Id.* ¶ 97.)  No "imagin[ation]" (Opp. 15) is

required to understand how AT&T's intentional withholding of tens of millions of dollars of payments could tip the scales for NCR in a way that cannot later be undone.

*Fourth*, AT&T misunderstands NCR's claim of irreparable harm based on the loss of its contractual right to arbitrate. That harm is not limited to situations where some "imminent insolvency, collapse, or other circumstances that would prevent [NCR's] claims from being fully heard and resolved." (*Id.* at 18.) It includes situations where the right to arbitrate is rendered meaningless because irreparable damage would be inflicted before the party can obtain a final award. That is what *Credit Suisse* stands for; "[w]ithout a preliminary injunction, the harm that Petitioner seeks to address via arbitration will occur before the arbitrator can render a decision, and Petitioner will lose its right to meaningfully resolve" its dispute. *Credit Suisse Sec. (USA) LLC v. Ebling*, 2006 WL 3457693, at *3 (S.D.N.Y. Nov. 27, 2006). The same is true here. AT&T makes much of NCR's "concession" that an arbitral award should be rendered in "less than a year's time." (Opp. 18-19). But the risks that NCR seeks to prevent—diverting necessary funds away from ongoing business operations, a potential credit rating downgrade, and an inability to refinance its debt on favorable terms—are near-term risks that NCR has alleged would come to pass well before February 2027. (Compl. ¶¶ 105, 110.)

Finally, in a transparent effort to avoid a court order, AT&T now claims it will resume payment after NCR incurs $66 million in costs for Kzoo River liabilities (Opp. 13 n.8; Kruger Decl. ¶ 17)—a departure from its prior position that payments were "paused" until NCR made, in AT&T's judgment, a "good faith counter" to the July Demand (Opp. Ex. 13, at 3). The Court should be skeptical of this claim. Prior to this lawsuit, AT&T asserted it has ***no*** payment obligation on ***any*** Kzoo Remediation Invoices until it receives the time and cost reports it demands (but is not entitled to) for Cravath fees on Kzoo-01. (*Id.* at 2.) AT&T has wielded that threat of

9

nonpayment as a weapon against NCR.  (*See* Compl. ¶¶ 56-74.)  AT&T's new and caveated assertion that it "intends to" resume payment after a certain threshold has been met, while "reserv[ing] all rights" to change its mind again (Opp. Ex. 17, at 2), cannot provide adequate assurance that this Court's intervention is not needed.

## IV.    PUBLIC INTEREST AND THE EQUITIES SUPPORT AN INJUNCTION.

NCR has established that a preliminary injunction would be equitable and further the public interest.  (Mot. §§ I.B, III.)  AT&T's arguments do not prove otherwise.  NCR's request for provisional relief is not contrary to the public interest in favor of arbitration.  (Opp. 24-25.)  This dispute *will* be finally decided on the merits in arbitration.  The injunction would prevent that arbitration from becoming a "hollow formality" by subjecting NCR to irreparable harm before it can obtain an award on the merits.  *See Thales Avionics, Inc. v. L3 Techs.*, 719 F.Supp.3d 337, 349 (S.D.N.Y. 2004) (injunction in aid of arbitration furthered public interest by "preserving the arbitrators' ability to order effective relief").  AT&T is incorrect that Section 9.7(b)'s use of the phrase "temporary restraining order" prevents such an injunction here.  (Opp. 24.)  The parties plainly intended to preserve the right to provisional relief "to preserve and protect the status quo." (SDA § 9.7(b).)  This Court has ample authority to award such relief.  *See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.3d 1049, 1052 (2d Cir. 1990).  Finally, the equities weigh against AT&T.  This Motion has no effect on AT&T's ability to defend itself on the merits; and, if AT&T prevails in arbitration, there will be nothing to "unscramble."  (Opp. 2.)  Unlike NCR, AT&T has not argued that paying its share of the Kzoo Remediation Invoices during the pendency of arbitration will cause it any hardship.

## CONCLUSION

NCR respectfully submits that the Court should grant its Motion.

10

DATED:  February 24, 2026

Respectfully submitted,

By:   _/s/ Yonatan Even_

**CRAVATH, SWAINE & MOORE LLP**
Yonatan Even
yeven@cravath.com
Vanessa A. Lavely
vlavely@cravath.com
Helam Gebremariam
hgebremariam@cravath.com
Katherine A. DuBois
kdubois@cravath.com

Two Manhattan West
375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff*
*NCR VOYIX Corporation*

**CERTIFICATE OF WORD COUNT COMPLIANCE**

Pursuant to local Civil Rule 7.1(c), I certify under penalty of perjury that the foregoing Reply Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction contains 3482 words, excluding items exempted by local Civil Rule 7.1(c). In making this certification I have relied upon the word count of Microsoft Word, the word-processing system used to prepare the memorandum.

DATED: February 24, 2026

Respectfully submitted,

By:   */s/ Yonatan Even*

**CRAVATH, SWAINE & MOORE LLP**
Yonatan Even
yeven@cravath.com
Vanessa A. Lavely
vlavely@cravath.com
Helam Gebremariam
hgebremariam@cravath.com
Katherine A. DuBois
kdubois@cravath.com

Two Manhattan West
375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff*
*NCR VOYIX Corporation*

12