# CRAVATH

Yonatan Even
yeven@cravath.com
T+1-212-474-1958
New York

April 24, 2026

### Re: *NCR Voyix Corporation v. AT&T Enterprises, LLC, f/k/a AT&T Corp., Case No. 26-cv-00848*

Dear Judge Ho:

I write on behalf of Plaintiff NCR Voyix Corporation ("NCR") to update the Court on events relevant to NCR's Motion for Preliminary Injunction against Defendant AT&T Enterprises, LLC, f/k/a AT&T Corp. ("AT&T" and, together with NCR, the "Parties"), filed on January 31, 2026 in the above-referenced action (the "Motion").

NCR's Motion seeks a preliminary injunction, in aid of arbitration, requiring AT&T to resume payments for its contractual share of costs incurred by NCR to remediate the Kalamazoo River, as NCR is required to do under its Consent Decree with the United States and the State of Michigan. The Parties' Separation and Distribution Agreement (the "SDA") requires AT&T to indemnify NCR for 37% of such costs as they are invoiced. Yet, in September 2025, AT&T abruptly broke from past practice and ceased paying validly issued invoices for these costs (referred to as the "Kzoo Remediation Invoices" in the Motion). As detailed in NCR's Motion, AT&T ceased payment for reasons that have nothing to do with the costs NCR has incurred on remediation, which are undisputed and are the basis for the amounts reflected in the unpaid Kzoo Remediation Invoices. Rather, AT&T is withholding sums it plainly owes under the SDA to exert financial pressure on NCR in hopes of extracting a "settlement" for unrelated costs reflected in invoices that AT&T has paid dating back to 2012, but for which it now demands a refund.

NCR has initiated arbitration proceedings to remedy AT&T's blatant breach of the SDA; but, as detailed in the Motion, NCR simultaneously appealed to this Court for interim relief to prevent imminent and irreparable harm to NCR's business from AT&T's nonpayment. As detailed in the Motion, AT&T's breach comes (uncoincidentally) at a time when NCR cannot afford to divert resources away from its ongoing business or take on additional debt to cover AT&T's share of remediation costs. NCR writes today in light of AT&T's ever-increasing arrears, to underscore the untenable financial strain that AT&T's breach is putting on NCR's business. NCR currently has outstanding invoices issued to AT&T totaling nearly $18.5 million, and AT&T also owes NCR nearly

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
100 Cheapside
London, EC2V 6DT
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

$500,000 in late-payment interest.  To put the total amount due in context, it represents nearly **50% of NCR's annual net income** from continuing operations in 2025.[1]

NCR cannot continue to shoulder these costs for AT&T.  Since the filing of its Motion, NCR's stock price has steeply declined, and several analysts have reduced their price targets for the company.  Earlier this month, S&P Global downgraded NCR's outlook and affirmed its B+ credit rating, citing the fact that NCR's "deleveraging has been slower than [S&P] anticipated."[2]  As discussed in the Motion, all of this is occurring at a time when NCR has an imminent need to access the capital markets to refinance its outstanding debt.

Moreover, AT&T has made a concerted effort to delay resolution of the Parties' disputes, presumably in hopes that NCR will cave to its demands under this increased financial pressure.  As of the date of this letter, and despite NCR's best efforts, the Parties still have not been able to appoint an arbitrator to preside over the dispute, requiring NCR to reach out to CPR Dispute Resolution Services and ask that an arbitrator be appointed for the Parties.

In sum, the risk of irreparable harm that motivated NCR to file its Motion is beginning to materialize, and NCR cannot rely on a near-term arbitration award for relief.  Under these circumstances, and in light of NCR's likelihood of success on the merits, the lack of any hardship to AT&T from continuing payments, and the strong public interest in holding parties to their contractual agreements and preventing arbitration from becoming a "hollow formality," this Court's urgent intervention is both necessary and appropriate.  *See Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 174 (S.D.N.Y. 2022) (granting preliminary injunction requiring continued compliance with contract to preserve status quo pending dispute resolution proceedings).

Sincerely,

*/s/ Yonatan Even*
Yonatan Even

---

[1] NCR Voyix Corp., Annual Report (Form 10-K) (Feb. 26, 2026) at 79 (reporting $42 million in net income from continuing operations attributable to NCR in 2025).

[2] *NCR Voyix Corp. Outlook Revised To Stable From Positive On Delayed Deleveraging; 'B+' Rating Affirmed*, S&P GLOBAL (Apr. 9, 2026), https://www.spglobal.com/ratings/en/regulatory/article/-/view/type/HTML/id/3543594?utm_campaign=website&utm_medium=email&utm_source=sendgrid.com.

The Honorable Dale E. Ho
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

cc: All counsel of record

(VIA ECF)