

**Sarah Gilbert**
sgilbert@crowell.com
212.895.4226

CROWELL & MORING LLP
2 Manhattan West
375 9th Avenue
New York, NY 10001
(202) 624-2500

April 28, 2026

<u>**VIA ECF**</u>

> **Re:** ***NCR Voyix Corporation v. AT&T Enterprises, LLC f/k/a AT&T Corp., Case No.*** <u>***26-cv-00848 – AT&T's Response to NCR's April 24, 2026 Letter***</u>

Dear Judge Ho:

I write on behalf of my client, Defendant AT&T Enterprises, LLC ("AT&T"), in response to the April 24, 2026 letter submitted by counsel for Plaintiff NCR Voyix Corporation ("NCR") (Docket No. 33) in the above referenced matter. NCR's letter seeks no relief and serves only to improperly supplement its preliminary injunction motion pending before this Court ("PI Motion"). In any event, NCR's late-breaking attempt to supplement its deficient record fails because, if anything, it underscores the same points AT&T made in its opposition: NCR has not suffered and will not suffer irreparable harm.

At the outset, NCR's letter is impermissible under this Court's rules. NCR cites no rule by which it filed this letter: NCR is not "seeking relief" or merely "communicat[ing]" with Chambers, *see* Judge Dale E. Ho Individual Rule 2, and NCR's letter is not a "letter-motion" applying for relief under S.D.N.Y. Local Rule 7.1. On the contrary, NCR seemingly filed its letter because the speculative harms NCR first identified in its January motion still have not come to fruition. NCR's letter thus amounts to an improper attempt to amend and supplement the record of its PI Motion without leave from the Court. The Court should disregard NCR's letter and deny NCR's PI Motion.

Even if the Court were to consider NCR's letter, it concedes that NCR has not suffered and will not suffer imminent irreparable injury. Indeed, contrary to the sky-is-falling claims made in its motion, NCR now admits that it has not suffered *any* irreparable injury since it filed its PI Motion in January, claiming that its alleged irreparable harm is only now "***beginning*** to materialize." (Docket No. 33 at 2) (emphasis added). Even putting aside this admission, NCR's attempt to move the goal posts and argue harm is *about* to begin now, fails on the evidence. In its PI Motion, NCR's central argument for irreparable harm was that NCR's credit rating would be downgraded due to AT&T's non-payment, which in turn would initiate a financial and reputational spiral for NCR. But NCR's own letter defeats that argument: NCR concedes that its credit rating was ***affirmed earlier this month***, shortly before NCR filed its letter. Indeed, financial analysts and rating agencies reviewing NCR have concluded that NCR's rating is "stable," that its "B+ rating" warrants being affirmed, and that NCR's credit rating and performance "will likely strengthen in 2027." Michelle Kogan & Tuan



Duong, Research Update: NCR Voyix Corp. Outlook Revised To Stable From Positive On Delayed Deleveraging; 'B+' Rating Affirmed, S&P Global Ratings (Apr. 9, 2026), https://www.spglobal.com/ratings/en/regulatory/article/-/view/type/HTML/id/3543593. At bottom, NCR's claims of a downgraded credit rating, and the resulting harm it would cause, were speculative when NCR initially made them and remain speculative now. The record evidence is again flatly inconsistent with the dire financial picture NCR paints for the Court.[1]

Similarly, NCR admits that it reported $42 million in net income from its continuing operations, and yet still vaguely asserts that it regrets operating with "steeply declined" stock prices and "financial strain." Docket No. 33 at 1–2. In any event, courts in the Second Circuit have made clear that simply because a company "will operate at a deficit over the course of this year and the next is not a sufficiently immediate and irreparable harm to warrant injunctive relief." *Consumer Directed Choices, Inc. v. Public Partnerships, LLC*, No. 1:25-CV-00868, 2025 WL 3485203, at *23 (N.D.N.Y. Dec. 4, 2025). Moreover, NCR repeats the same financial injury, just updated to current conditions (under which it remains operational and profitable).[2] Specifically, NCR again complains of discrete, easily identifiable contract damages (and alleged interest)—both of which are easily remediable by money damages. As AT&T already explained in its opposition to NCR's PI Motion, "NCR asserts nothing more than a garden-variety contract claim seeking payment of identified funds with easily calculable damages." Docket No. 24 at 21 (citing *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (explaining that irreparable injury exists only when "remedies . . . at law, such as monetary damages, are inadequate to compensate" for the harm) (citation omitted)).[3] Further, NCR fails to contextualize its claimed damages against the relief sought by AT&T; in reality, AT&T's claims in the underlying arbitration dwarf NCR's, with AT&T seeking tens of millions of dollars more in damages than those lodged here by NCR.

Lastly, NCR misrepresents the status of the underlying arbitration proceedings. AT&T has, in good faith, abided by the parties' agreement to arbitrate and participated in the ongoing arbitration proceedings consistent with the SDA. Indeed, the parties have undertaken significant

---

[1] In addition to failing on the evidence, NCR's argument that a credit rating downgrade constitutes irreparable harm fails as a matter of law. As AT&T already argued in its underlying papers, a downgrade in a company's credit rating—which has not occurred and is not likely to occur here—is on its own insufficient to suggest imminent danger of insolvency or establish significant financial harm. *See* Docket No. 24 at 20 (citing *Gen. Transp. Servs., Inc. v. Kemper Ins. Co.*, No. 03-cv-620, 2003 WL 21703635, at *2–3 (N.D.N.Y. June 25, 2003)). Similarly, any stock-price analytics are speculative and do not constitute cognizable harm redressable by a preliminary injunction.

[2] NCR's latest allegations of harm are a little more than a repackaging of the same conclusory assertions from its underlying papers. *Compare* Docket No. 10 at 26 (claiming NCR "cannot shoulder AT&T's share of NCR's ongoing obligations") *with* Docket No. 33 at 2 (stating NCR "cannot continue to shoulder these costs for AT&T"). Such vague and conclusory allegations, unsupported by any evidence, are plainly insufficient to satisfy NCR's irreparable injury burden. *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (a movant must demonstrate that it "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm").

[3] Moreover, as AT&T explains in its memorandum of law opposing NCR's PI Motion, NCR is held to a heightened standard because NCR is requesting a mandatory injunction. *See, e.g.*, Docket No. 24 at 15.

---



negotiations to select an arbitrator to hear their dispute. Each party identified five potential candidates, narrowed that field down to four candidates (two proposed by each party), and then contacted all four about potential interest, availability, and conflicts. After that process, three potential arbitrators remained—one proposed by AT&T and two proposed by NCR. AT&T offered a randomized arbitrator-selection process between AT&T's candidate and one of NCR's candidates (of NCR's choosing). NCR refused that proposal, pushing instead for a deal that would stack the deck in NCR's favor by allowing NCR to submit two candidates to AT&T's one candidate for randomized selection—a term to which AT&T could not reasonably agree. That history aside, NCR has now asked CPR to select an arbitrator, and the parties have an initial conference with CPR this week. After that conference, an arbitrator likely will be seated promptly, with the proceedings likely to begin next month. Thus, NCR is free to seek its requested preliminary relief before that soon-to-be-seated arbitrator—or it could seek emergency relief from the CPR beforehand—as AT&T explained in its opposition to NCR's PI Motion. *See, e.g.*, Docket No. 24 at 9–10.

For the foregoing reasons, AT&T respectfully requests that the Court disregard NCR's unauthorized letter, deny NCR's PI Motion, and allow the parties' dispute to proceed in the arbitral forum to which they contractually agreed.

We thank the Court for its time and consideration of this letter.

Sincerely,

 /s/ *Sarah Gilbert*

Sarah Gilbert